IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JORI ANN SOBCZAK,

      **Plaintiff,**

    vs.                                                                                               Civ. No. 16-968 KK

**NANCY A. BERRYHILL,**[1]
**Acting Commissioner of Social Security,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER[2]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 16) filed December 12, 2016, in support of Plaintiff Jori Ann Sobczak's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for Title II disability insurance benefits and Title XVI supplemental security income benefits. On March 20, 2017, Plaintiff filed her Motion to Remand or Reverse ("Motion"). (Doc. 23.) The Commissioner filed a Response in opposition on May 16, 2017 (Doc. 25), and Plaintiff filed a Reply on June 6, 2017. (Doc. 26.) The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill is substituted for Carolyn Colvin as the Acting Commissioner of the Social Security Administration. Fed. R. Civ. P. 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Docs. 4, 6, 10.)

## I. Background and Procedural Record

Claimant Jori Ann Sobczak ("Ms. Sobczak") alleges that she became disabled on July 3, 2014, at the age of thirty-seven because of broken back, fibromyalgia, post-traumatic stress disorder, mood disorder, depression due to chronic pain, and five slipped discs. (Tr. 273, 277.[3]) Ms. Sobczak completed the tenth grade, and worked as a gas station/convenience store cashier and disabled adult and elder adult caretaker. (Tr. 278.)

On July 11, 2014, Ms. Sobczak filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq., and for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq. (Tr. 218-19.) Ms. Sobczak's applications were initially denied on December 18, 2014. (Tr. 93, 94, 95-106, 107-118, 147-50, 151-54.) They were denied again at reconsideration on March 12, 2015. (Tr. 119-31, 132-44, 145, 146, 161-66.) On April 1, 2015, Ms. Sobczak requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 168-69.) The ALJ conducted a hearing on January 1, 2016. (Tr. 60-92.) Ms. Sobczak appeared in person at the hearing with attorney Michelle Baca. (*Id.*) The ALJ took testimony from Ms. Sobczak (Tr. 65-83), and an impartial vocational expert ("VE"), Diane Weber. (Tr. 84-91.) On March 10, 2016, the ALJ issued an unfavorable decision. (Tr. 39-54.) On July 29, 2016, the Appeals Council issued its decision denying Ms. Sobczak's request for review and upholding the ALJ's final decision. (Tr. 1-6.) On August 29, 2016, Ms. Sobczak timely filed a Complaint seeking judicial review of the Commissioner's final decision. (Doc. 1.)

---

[3] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 16) that was lodged with the Court on December 12, 2016.

## II. Applicable Law

    A.    **Disability Determination Process**

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2)    At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3)    At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4)    If, however, the claimant's impairments do not meet or equal in severity one of the listing described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n. 5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

B. **Standard of Review**

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias,* 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d

4

1270, 1272 (10th Cir. 2008).  A decision is based on substantial evidence where it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992).  The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).  Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

### III. Analysis

The ALJ made her decision that Ms. Sobczak was not disabled at step five of the sequential evaluation.  Specifically, the ALJ found that Ms. Sobczak met the insured status requirements through December 31, 2017, had not engaged in substantial gainful activity since her alleged onset date of July 3, 2014 and had severe impairments of degenerative disc disease, obesity, fibromyalgia, post-traumatic stress disorder and depression that did not meet or medically equal the severity of a listing.  (Tr. 44-45.) She found that Ms. Sobczak had the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(a) and 416.967(a).

> In addition, the claimant can occasionally climb stairs.  The claimant should never climb ladders or scaffolds.  The claimant can occasionally balance and stoop.  The claimant should never kneel, crouch or crawl.  The claimant can frequently but not constantly, handle and finger with her right hand, which is her dominant hand. The claimant is limited to simple, work related decisions, few work place changes and only occasional and superficial interaction with the public or coworkers.

> Light work involves lifting up to 10 pounds frequently and 20 pounds occasionally, with pushing and pulling within the same weight restrictions; standing or walking for up to 6 hours per day with normal breaks; and sitting 2 to 6 hours per day with normal breaks.

(Tr. 46.) Based on the RFC and the testimony of the VE, the ALJ concluded that Ms. Sobczak was incapable of performing her past relevant work, but that there were jobs that existed in significant numbers in the national economy that the claimant could perform. (Tr. 52-54.)

Ms. Sobczak asserts several arguments in support of her Motion as follows: (1) the ALJ failed to use the correct legal standards in weighing the treating and examining source evidence, including why she rejected the opinion of the consulting psychologist; (2) the RFC is contrary to the substantial evidence of record because the ALJ failed to weigh the evidence properly, and failed to consider Ms. Sobczak's ability in all areas of functioning; (3) the ALJ failed to properly assess Ms. Sobczak's statements regarding the intensity, persistence, and limiting effects of her symptoms; and (4) the ALJ failed to clarify the inconsistency between the VE testimony and the DOT information regarding Ms. Sobczak's limitation to simple work related decisions and the reasoning three level jobs the VE identified. (Doc. 23 at 6-24.) The Court finds grounds for remand as discussed below.

### A. RFC Assessment

Ms. Sobczak argues that the ALJ's RFC is not supported by substantial evidence because the ALJ failed to weigh the medical evidence properly and failed to consider Ms. Sobczak's abilities in all areas of functioning. (Doc. 23 at 13-22.) In particular, Ms. Sobczak asserts that the ALJ failed to consider functional limitations related to her mental health problems; her neck, back and hand impairments; her chronic pain; and her obesity. (*Id.*) Ms. Sobczak also asserts that the ALJ improperly assessed her statements regarding the intensity, persistence, and limiting effects of her symptoms. (*Id.*) Ms. Sobczak further contends that the ALJ failed to provide a

narrative discussion describing how the evidence supported her conclusions. (*Id.*) The Commissioner asserts that the ALJ provided a thorough summary and reasonable analysis of the record that supports the ALJ's RFC. (Doc. 25 at 12-17.)

Assessing a claimant's residual functional capacity is an administrative determination left solely to the Commissioner. 20 C.F.R. §§ 404.1546(c) and 416.946(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual functional capacity."); *see also* SSR 96-5p, 1996 WL 374183, at *2 (stating that some issues are administrative findings, such as an individual's RFC). In assessing a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, and review all of the evidence in the record. *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R. §§ 404.1545(a)(2) and (3) and 416.945(a)(2) and (3). The ALJ must consider and address medical source opinions and must always give good reasons for the weight accorded to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2)[5]; SSR 96-8p, 1996 WL 374184, at *7. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. Most importantly, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells*, 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7). The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. SSR 96-8p, 1996 WL 374184, at

---

[5] For all claims filed on or *after* March 27, 2017, 20 C.F.R. §§ 404.1527 and 416.927 are rescinded and replaced with 20 C.F.R. §§ 404.1520c and 416.920c. 82 Fed. Reg. 5844, 5869. Further, the Social Security Administration rescinded SSR 96-2p effective March 27, 2017, to the extent it is inconsistent with or duplicative of final rules related to Giving Controlling Weight to Treating Source Medical Opinions found in 20 C.F.R. §§ 404.1527 and 416.927. 82 Fed. Reg. 5844, 5845.

7

*7. When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that her RFC conclusions are not supported by substantial evidence. *See Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking her findings to specific evidence. *See Spicer v. Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003) (unpublished). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to her conclusions. *Cruse v. Dept. of Health & Human Services*, 49 F.3d 614, 618 (10th Cir. 1995).

Here, the ALJ summarized certain of Ms. Sobczak's medical evidence, but failed to include a narrative discussion describing how the evidence supported her RFC assessment. The ALJ must explain how she reaches her decision. When an ALJ merely summarizes the facts, notes that she has considered all of the facts, and then announces her decision, there is nothing for the court to review. In other words, the Court is unable to determine how the ALJ analyzed the evidence. *See* SSR 96-8p, 1996 WL 374184, at 7 (providing narrative discussion requirements). When the evidence is contradictory or ambiguous, as it is in most cases, the Court cannot know which evidence was given what weight, or how the ambiguities were resolved. Therefore, to determine whether substantial evidence supports the conclusion, the Court would have to reweigh the evidence, which is precluded by law. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (the Court will not reweigh the evidence of substitute its judgment for the Commissioner's). In *Howard v. Barnhart*, 379 F.3d 945, 947-48 (10th Cir. 2004), the Tenth Circuit stated that the lack of analysis accompanying the ALJ's RFC determination was troubling and noted that it had previously urged ALJs to include reasoning in their decision to make

8

appellate review not only possible but meaningful. *Id.* at 947. In that case, the Court went on to find however, that none of the medical evidence conflicted with the ALJ's conclusion that the claimant could perform light work and concluded that when the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened. *Id.* That is not the case here. Here, the ALJ's summary of the medical evidence is incomplete and the ALJ excluded evidence that is at odds with the RFC she assessed. *See Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) (an ALJ, in addition to discussing the evidence supporting her decision, must also discuss the uncontroverted evidence she chooses not to rely upon, as well as significantly probably evidence she rejects).

### 1. Degenerative Disc Disease and Fibromyalgia

The ALJ summarized certain of Ms. Sobczak's medical source notes related to her degenerative disc disease and fibromyalgia, improperly emphasizing the parts that were favorable to a finding of nondisability while ignoring other probative evidence. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[a]n ALJ is not entitled to pick and choose through an uncontradicted medical onion, taking only the parts that are favorable to a finding of nondisability.").[6] For example, the ALJ noted that on July 22, 2013, Ms. Sobczak reported to PA-C Heather Dountas of ABQ Health Partners that aquatic therapy was really helping her and that her pain was well managed with Hydrocodone, Gabapentin and Ibuprofen, but failed to include that Ms. Sobczak nonetheless complained of joint, muscle and back pain, and was "slightly stiff to get out of chair or ambulate unassisted." (Tr. 383-84.) The ALJ noted that on September 23, 2013, PA-C Dountas indicated Ms. Sobczak had done remarkably better after completing seven aquatic therapy sessions, but failed to include that Ms. Sobczak complained of

---

[6] The medical evidence record does not contain, nor does the ALJ point to, any evidence that contradicts Ms. Sobczak's diagnoses of degenerative disc disease and fibromyalgia.

joint, muscle and back pain, had to alternate between sitting and standing during the visit to make herself comfortable, and had problems lifting her young daughter. (Tr. 397-97.) The ALJ noted that on October 23, 2013, DO Clare Castiglia of ABQ Health Partners indicated "normal gait" on physical exam, but failed to include that Ms. Sobczak complained of limb, muscle, and back pain, neurologic numbness down her left leg, and reported that her physical impairments impeded her ability to exercise and/or lose weight. (Tr. 403-04.) The ALJ noted that on December 19, 2013, PA-C Dountas indicated that Ms. Sobczak's degenerative intervertebral disc disease, lumbar stenosis, lumbar radiculopathy, fibromyalgia, and right foot pain were stable, but failed to include that Ms. Sobczak complained of joint, neck, muscle and back pain.[7] (Tr. 411.)

The ALJ's summary also completely omitted all of Ms. Sobczak's ABQ Health Partner medical source[8] records from 2014 that demonstrated Ms. Sobczak's persistent complaints of joint, muscle, neck and back pain, noted her need to stand throughout entire appointments due to pain, and on at least one occasion indicated that she had limited active and passive range of motion. (Tr. 464-66, 417, 423, 474, 521-22, 535-36.) The medical evidence that the ALJ ignored or failed to include in her summary conflicts with the ALJ's conclusions regarding Ms. Sobczak's ability to do work related physical activities.

### 2. **Morbid Obesity**

The ALJ's medical summary included references to medical source diagnoses of Ms. Sobczak's morbid obesity,[9] but the ALJ failed to discuss how she considered Ms. Sobczak's

---

[7] The ALJ also failed to define what *stable* looks like for Ms. Sobczak. *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (finding that references to claimant being "stable" on medication may have simply meant claimant was not suicidal).

[8] Tej Bhavsar, M.D. and Heather Dountas, PA-C. (Tr. 464-66, 417, 423, 474, 521-22, 535-36.)

[9] On July 22, 2013, Heather Dountas, PA-C, noted Ms. Sobczak was morbidly obese and that she was to have weight loss surgery, but that did not occur. (Tr. 49, 378, 382.) On July 29, 2013, Gerhard Nyase, M.D., indicated on physical exam that Ms. Sobczak was obese. (Tr. 49, 389.) In October 2012, Heather Dountas, PA-C, noted that

morbid obesity in the RFC assessment.[10] Social Security Ruling 02-1p provides guidance and instructions on how an ALJ *must* consider obesity in the RFC assessment. *See* SSR 02-1p, 2002 WL 34686281. "When we identify obesity as a medically determinable impairment . . . , we will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments that we identify." *Id.* at *7. The Social Security Ruling instructs that

> [o]besity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.
>
> The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.
>
> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p . . . , our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.

---

Ms. Sobczak had a consultation for weight loss surgery, but had not had her endoscopy in follow up. (Tr. 49, 402.) In July 2015, Dr. Ronald Sautter advised Ms. Sobczak that weight loss would significantly improve or eliminate her pain. (Tr. 51, 633.)

[10] The record is replete with references to Ms. Sobczak's morbid obesity and its impact of her ability to function. (*See e.g.,* Tr. 663 ("Jori has continually put on weight as a result of her pain that worsens her ability to function"); Tr. 398 ("Unfortunately, I do not think her [pain] symptoms will improve, unless she has significant weight loss."); Tr. 414 (Morbid Obesity – Worse); Tr. 422 ("Pt. has difficult time working in a physically demanding occupation because of her chronic pain issues, back and muscular pain issues and weight. . . . She is still continuing to struggle with her weight."); Tr. 376, 383, 396, 403, 411, 417, 441, 465, 473, 522, 528, 535, 597 (BMI over 40).)

> The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.
>
> . . .
>
> As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.

SSR 02-1p, 2002 WL 34686281, at *6-7. The ruling further explains that "[o]besity is a life-long disease" and that "most treatments for obesity do not have a high rate of success." *Id.* at *8-9. The ruling also discusses that behavior modification is the usual treatment for levels I and II obesity (BMI 30.0-39.9), but when obesity has reached level III (BMI of 40 or great), physicians generally recommend surgery. *Id.* at 8. Here, the record supports that Ms. Sobczak had a BMI over 40 and was encouraged to pursue bariatric surgery.[11] (*See* fn. 5, *supra*; Tr. 378, 382, 398, 417, 419, 516, 530.) PA-C Dountas also recommended Ms. Sobczak have a sleep study given her morbid obesity. (Tr. 419.) The ALJ determined at step two that Ms. Sobczak had a medically determinable severe impairment of obesity. (Tr. 44.) The ALJ also determined that she had, *inter alia*, severe impairments of degenerative disc disease and fibromyalgia. (*Id.*) As such, she was required to consider any functional limitations resulting from Ms. Sobczak's obesity, and the combined effect of her obesity with her other impairments. SSR 02-1p, 2002 WL 34686281, at *6-7. The ALJ's RFC determination is silent regarding any of these considerations.

---

[11] On December 19, 2013, Ms. Sobczak informed Heather Dountas, PA-C, that she had put bariatric surgery on hold because she was having difficulty finding placement for her daughter to be cared for while she goes out and does endoscopy at Sandoval Regional Medical Center and complying with what was required prior to surgery. (Tr. 410.) On December 10, 2014, Ms. Sobczak informed Heather Dountas, PA-C, that she was "waiting for bariatric surgery at a point so that she can manage this with her family responsibilities." (Tr. 530.)

### 3. <u>Hand Pain</u>

The ALJ also excluded probative evidence related to Ms. Sobczak's complaints of hand pain. The ALJ stated in her determination that the record was devoid of any diagnosis regarding significant limitations in handling or reaching. (Tr. 48.) Then, as part of her medical summary, the ALJ listed Dr. Ronald Sautter's March 27, 2015, record in in which he assessed Ms. Sobczak with Raynaud's disease[12] and stated that Ms. Sobczak complained of only right hand pain. (Tr. 50.) The ALJ's summary, however, failed to include that Ms. Sobczak presented to Dr. Sautter of ABQ Health Partners on February 20, 2015, with complaints of, *inter alia*, worsening pain and numbness and weakness in her hands *bilaterally*. (Tr. 596.) On March 27, 2015, Ms. Sobczak followed up with Dr. Sautter and reported she had increased pain in her *hands*, particularly in the right hand, and that *they* were turning colors, such as blue and then red and white. (Tr. 589.) On physical exam, Dr. Sautter noted bluish discoloration throughout the [right] hand, particularly the fingers, which changed to more of a red color during the examination. (Tr. 590.) Dr. Sautter diagnosed Raynaud's disease. (Tr. 585.) On April 10, 2015, Ms. Sobczak saw Allison Richards, M.D., of ABQ Health Partners, and complained of right hand pain for about a year with more consistent swelling, and numbness primarily involving the right index finger and thumb. (Tr. 615.) Dr. Richards' impression was "episodes of swelling and rash formation about the right thumb MCP joint and second and third MCP joints that occurs 3-4 times per week." (Tr. 610.) Thus, the medical evidence related to Ms. Sobczak's

---

[12] Raynaud's disease causes some areas of your body — such as your fingers and toes — to feel numb and cold in response to cold temperatures or stress. In Raynaud's disease, smaller arteries that supply blood to your skin narrow, limiting blood circulation to affected areas (vasospasm). https://www.mayoclinic.org/diseases-conditions/raynauds-disease/symptoms-causes/syc-20363571.

13

hand pain and diagnoses conflicts with the ALJ's conclusions regarding Ms. Sobczak's ability to do work related physical activities.

For the foregoing reasons, the ALJ failed to provide a narrative discussion describing how the evidence supported her conclusions. The Court, therefore, finds that the ALJ's RFC is not supported by substantial evidence. *See Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003).

### B. The ALJ Failed to Resolve the Conflict Between the VE's Testimony and the Job Descriptions in the DOT

Ms. Sobczak argues that the ALJ's step five findings are not supported by substantial evidence because, *inter alia*, the ALJ failed to resolve the conflict between the VE's testimony and the job descriptions in the DOT. (Doc. 23 at 22-24.) Ms. Sobczak explains that the jobs the VE identified based on the ALJ's hypothetical require reasoning levels that are incompatible with the ALJ's mental RFC limiting her to simple, work-related decisions. (*Id.*) As such, Ms. Sobczak asserts there was an apparent conflict between the VE's testimony and the DOT that the ALJ had a duty to resolve. (*Id.*) The Commissioner contends that Ms. Sobczak's argument fails because "simple, work related decisions" relates to the specific vocational preparation (SVP)[13] rating in the DOT that describes the skill level required for a particular job, and that all three jobs the VE identified were unskilled. (Doc. 25 at 19-23.) The Commissioner explains that the reasoning level is part of the General Education Development (GED) framework and reflects the educational level necessary for satisfactory job performance and not the mental or skill requirements of the job. (*Id.*) In the alternative, the Commissioner argues that

---

[13] "Specific Vocational Preparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dictionary of Occupational Titles – Appendix C – Components of the Definition Trailer, 1991 WL 688702 (2008).

any conflict between the VE's testimony and the ALJ's RFC limitation to "simple, work related decisions," was harmless error because the VE identified one job with level two reasoning which is not inconsistent with a limitation to simple work. (*Id.*)

At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Id.* The Tenth Circuit has held that "an ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). After the Tenth Circuit's holding in *Haddock*, the Social Security Administration promulgated Social Security Ruling 00-4p and further clarified the ALJ's affirmative responsibility to ask about conflicts. SSR 00-4p instructs that

> [w]hen vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p, 2000 WL 1898704, at *4. In *Hackett v. Barnhart,* 395 F.3d 1168 (10th Cir. 2005), the Tenth Circuit agreed with the claimant that there was an apparent conflict between a claimant's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified. *Hackett*, 395 F.3d at 1176. The Court there remanded to allow the ALJ to address the conflict. *Id.*

The Commissioner argues that *Hackett* does not apply here because it did not consider whether the apparent conflict at issue could be explained by the fact that GED describes a job

15

performer's educational background rather than the job's mental or physical requirements. (Doc. 25 at 21-23.) The Court does not agree. The SVP level measures the skill level necessary to perform a particular job; however, a claimant's skill level is not the only factor an ALJ considers in determining whether there are jobs available in significant numbers in the national economy that a claimant can do. 20 C.F.R. §§ 404.1560(c)(1) and 416.960(c)(1) (Commissioner considers RFC and vocational factors of age, education, and work experience to decide whether claimant can adjust to work). Thus, even acknowledging that the GED ratings generally correspond to a person's level of formal and informal education that makes them suitable for a job, *Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) (unpublished), a claimant's education is one vocational factor that bears on the ALJ's ultimate determination of whether a claimant can adjust to other work at step five. *See* 20 C.F.R. §§ 404.1564(b)(2) and (5) and 416.964(b)(2) and (5) (defining limited education as a vocational factor). Moreover, the Court is not persuaded that merely identifying jobs that are unskilled neutralizes or supplants the reasoning level conflict as the Commissioner argues. *See McHerrin v. Astrue*, 2010 WL 3516433, at *6, 156 Soc. Sec. Rep. Serv. 598 (E.D. Pa., Aug. 31, 2010) (explaining that a number of courts have found the DOT's reasoning levels are much more indicative of whether a claimant is capable of performing more than simple, repetitive tasks) (internal citations omitted)); *see also Chapo v. Astrue*, 682 F.3d 1285, 1290, at n. 3 (10th Cir. 2012) ("[w]hile the jobs cited by the VE happen to be unskilled, that just accounted for issues of skill transfer, not impairment of mental functions – which 'are not skills, but, rather, general prerequisites for most work at any skill level'" (quoting *Wayland v. Chater*, 76 F.3d 394 (10th Cir. 1996) (unpublished))); *see also Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (holding that a limitation to unskilled work did not account for several effects of mental impairment); *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997) (explaining that

many unskilled jobs require more than the mental capacity to follow simple instructions); *Cooper v. Barnhart*, 2004 WL 2381515, *4 (N.D. Ola. Oct. 15, 2004) (finding that a limitation to simple tasks appears more squarely addressed by a job's reasoning level, than to its SVP level, which focuses on vocational preparedness necessary to perform the job); SSR 85-15, 1985 WL 56867, at *6 ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job."). For these reasons, the Court declines to adopt the Commissioner's position that the GED reasoning levels can be disregarded when addressing the mental demands of jobs listed in the DOT and that identifying unskilled jobs eliminates any conflicts and accommodates a claimant's limitation to do simple work. As such, the ALJ erred in failing to resolve the conflict between the VE's testimony and the job descriptions in the DOT.

The question then is whether the Commissioner has carried her burden at step five and demonstrated that work exists in significant numbers in the national economy that Ms. Sobczak can perform given that the VE identified only one job suitable to Ms. Sobczak's mental limitations. *See Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (finding that excusing the ALJ's failure to assess whether a significant number of jobs existed from one properly identified job would be an improper exercise in judicial factfinding rather than a proper application of harmless-error principles)[14]; *see also Chavez v. Barnhart*, 126 F. App'x 434, 436-37 (10th Cir. 2005) (unpublished) (declining Commissioner's invitation to find harmless error on the ground that the number of jobs was significant as a matter of law and remanding because ALJ did not have an opportunity to evaluate whether the one properly identified job, standing

---

[14] In *Allen v. Barnhart*, at issue was whether one hundred surveillance jobs statewide constituted a significant number under the statute. 357 F.3d 1140, 1144 (10th Cir. 2004).

alone, existed in significant numbers).[15]  The Court is remanding this case because the ALJ's RFC is not supported by substantial evidence, and thus declines to resolve this question.

C. **Remaining Issues**

The Court will not address Ms. Sobczak's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand.  *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

IV. **Conclusion**

For the reasons stated above, Ms. Sobczak's Motion to Reverse and Remand for Rehearing (Doc. 23) is **GRANTED.**

*[signature]*

_____
**KIRTAN KHALSA**
**United States Magistrate Judge,**
**Presiding by Consent**

---

[15] In *Chavez v. Barnhart*, 126 F. App'x 434, 437-37 (10th Cir. 2005) (unpublished), at issue was whether 49,957 jobs nationally and 199 jobs in the region constituted a significant number of jobs under the statute.